JUN 02 2016

D.S.
S.D. OF N.Y.

ORIGINAL

Approved: _Christine Magdo_
CHRISTINE I. MAGDO
Assistant United States Attorney

Before:   HONORABLE ANDREW J. PECK
United States Magistrate Judge
Southern District of New York

**16 MAG 3503.**

- - - - - - - - - - - - - - - - - - x
                                    :
UNITED STATES OF AMERICA            :
                                    :
              - v. -                :
                                    :
HAENA PARK,                         :
                                    :
              Defendant.            :
                                    :
- - - - - - - - - - - - - - - - - - x

**SEALED COMPLAINT**

Violations of
7 U.S.C. §§ 6b(a)(2),
13(a)(1) and 13(a)(5);
18 U.S.C. §§ 1343 & 2.

COUNTY OF OFFENSE:
NEW YORK

SOUTHERN DISTRICT OF NEW YORK, ss.:

Paul Rooney, being duly sworn, deposes and says that he is a Special Agent with the Department of Homeland Security, Homeland Security Investigations ("HSI") and charges as follows:

### COUNT ONE
### (Commodities Fraud)

1.     From in or about January 2010 through in or about June 2016, in the Southern District of New York and elsewhere, HAENA PARK, the defendant, while acting as the principal of a commodity pool operator, willfully and knowingly, in connection with an order to make and the making of a contract of sale of a commodity for future delivery, to wit, off-exchange foreign currency contracts, made and to be made for and on behalf of and with another person, directly and indirectly: (a) cheated and defrauded another person, and attempted to do so; (b) made and caused to be made to another person a false report and statement and entered and caused to be entered for another person a false record; and (c) deceived another person, and attempted to do so, by any means in regard to an order and contract and the disposition and execution of an order and contract, and in regard to an act of agency performed, with respect to an order and contract for the other person, to wit, PARK, on behalf of her firms "Phaetra Capital Management" and "Argenta," solicited more than $23 million in funds from investors purportedly for

the purpose of trading in a variety of securities and commodities, including off-exchange foreign currency contracts, through the use of false and misleading statements about the historical performance of the firms and other investments.

(Title 7, United States Code, Sections 6b(a)(1) and (a)(2) and 13(a)(1)and (a)(5); Title 18, United States Code, Section 2.)

## COUNT TWO
### (Wire Fraud)

2.      From in or about January 2010 through in or about June 2016, in the Southern District of New York and elsewhere, HAENA PARK, the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted by means of wire, radio, and television communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, PARK, on behalf of her firms "Phaetra Capital Management" and "Argenta," solicited more than $23 million in funds from investors purportedly for the purpose of trading in a variety of securities and commodities, including off-exchange foreign currency contracts, through the use of false and misleading statements, including through email and telephone communications, about the historical performance of the firms and other investments.

(Title 18, United States Code, Sections 1343 and 2.)

        The bases for my knowledge and for the foregoing charges are, in part, as follows:

3.      I have been a Special Agent with HSI for approximately 8 months, and, before that, I was a Special Agent with the Internal Revenue Service, Criminal Investigations, for six years.   I am currently assigned to the El Dorado Task Force, a multi-agency group that is responsible for investigating violations of the federal securities and commodities laws, as well as wire, bank, and mail fraud laws and related offenses.   I have participated in numerous investigations of these offenses, and I have made and participated in making arrests of numerous individuals for committing such offenses.

2

4.    The information contained in this affidavit is based upon my personal knowledge, as well as information obtained during this investigation, directly or indirectly, from other sources, including documents and information provided to me by others.  Because this affidavit is prepared for limited purposes, I have not set forth each and every fact I have learned in connection with this investigation.  Where conversations and events are referred to herein, they are related in substance and in part.  Where dates, figures, and calculations are set forth herein, they are approximate.

## Background

## The Defendant and Relevant Entities

5.    Based on interviews I have conducted of victim investors, my review of documents provided by victim invesors, my review of a memorandum documenting an interview by the National Futures Association ("NFA") of HAENA PARK, the defendant, my review of electronic communications between PARK and others, and my review of bank and brokerage account records for accounts affiliated with PARK and Argenta Group, LLC, I have learned, among other things, the following:

a.    Argenta Group, LLC ("Argenta") was a New York limited liability company formed in May 2010.  At all times relevant to this Complaint, Argenta was not registered with the the Commodities Futures Trading Commission ("CFTC"). From in or about July 2015 through in or about June 2016, PARK maintained a bank account in the name of Argenta (the "Argenta Account") at a bank located in New York, New York, and was at all times the sole signatory on that account. In connection with opening the Argenta Account, PARK represented to the bank that she was the President and Chairperson of Argenta.

b.    From on or about March 26, 2013 through on or about September 23, 2013, Argenta Capital GP LLC ("ACGP") and Argenta Capital LLC ("AC") (together, the "Argenta Advisors") were entities controlled by PARK that had applied for registration with the CFTC as commodity pool operators and commodity trading advisors. While the registration applications of the Argenta Advisors were pending with the CFTC, PARK withdrew the entities from the application process. At all times relevant to this Complaint, the Argenta Advisors were not registered with the CFTC.

3

c.   In late 2013, PARK changed the names of ACGP and AC to Phaetra Capital GP LLC ("PCGP"), a Delaware limited liability partnership, and Phaetra Capital Management LP ("Phaetra Capital Management") (together,  the "Phaetra Advisors"), a Delaware limited partnership.

d.   From on or about January 7, 2014, through in or about June 2016, the Phaetra Advisors were registered with the CFTC as commodity pool operators located in New York, New York, and PARK was registered as an Associate Member, Principal, and Associated Person of the Phaetra Advisors.

e.   At various times relevant to this Complaint, PARK maintained personal bank accounts in her name ("Personal Bank Account-1" and "Personal Bank Account-2") at banks located in New York, New York, for which accounts PARK was the sole signatory.

f.   At all times relevant to this Complaint, PARK maintained a personal brokerage account (the "Brokerage Account") at a U.S. brokerage firm. PARK was the only authorized trader on the Brokerage Account.

g.   At all times relevant to this Complaint, PARK controlled the email address haena.park@gmail.com (the "Park Email Account").

## Overview of the Scheme to Defraud

6.   From in or about January 2010 through in or about June 2016, HAENA PARK, the defendant, raised more than $23 million from more than twenty individual investors, purportedly for the purpose of trading in a variety of securities and commodities, including equities, futures, and other off-exchange foreign currency ("forex") transactions.

7.   From in or about January 2010 through in or about June 2016, HAENA PARK, the defendant, solicited the investments, individually and for Argenta and for Phaetra Capital Management, by falsely representing to investors, including by telephone and through electronic mail, including through the Park Email Account, that PARK was an accomplished forex trading advisor earning annualized returns as high as 48.9 percent for her investors.  In truth and in fact, PARK was not an accomplished forex trader, her trading was consistently unsuccessful, and the trading results emailed to investors by PARK were false and did not reflect the trading losses actually incurred by PARK.  In fact, from in or about January 2010 through in or about June

2016 PARK lost approximately $19.5 million of the $20 million that she traded, including commissions and fees, principally in highly leveraged futures and forex transactions.

8.     To prevent or forestall redemptions by investors, and to continue to raise money from investors to fund her scheme, HAENA PARK, the defendant, generated fictitious account statements, which she sent to investors on a monthly basis. Instead of accurately reporting the trading losses PARK was suffering, the account statements indicated that the investors were making money nearly every month.

9.     From in or about January 2010 through in or about June 2016, to hide her trading losses, HAENA PARK, the defendant, used new investor funds to pay back other investors in a Ponzi-like fashion.  In total, PARK distributed approximately $3 million back to investors from funds deposited by new investors.

### Victim-1

10.     Based on my participation in the interview of a victim investor ("Victim-1") of HAENA PARK, the defendant, a review of documents provided by tVictim-1, and a review of electronic communications between Victim-1, PARK, and others, I have learned the following:

       a.     In the 1990s, Victim-1 met PARK when they attended the same university. At the time of this Complaint, Victim-1 was a university professor residing in London, England.

       b.     On or about January 6, 2016, after Victim-1 had expressed an interest in investing with PARK, PARK sent an email from the Park Email Account to Victim-1 attaching a chart entitled "Historical Returns" (the "Historical Returns Chart"), which purported to show the returns that PARK had obtained for investors between November 2009 and December 2015. The annual rates of return ranged from 21.6 percent to 48.9 percent. The Historical Returns Chart reflected that one million dollars invested with PARK in November 2009 would have been worth over $6 million dollars by the end of 2015, which amounted to a total return of 514 percent. To the same email, PARK attached an investor presentation for Phaetra Capital Management (the "Phaetra Investor Presentation"). In the Phaetra Investor Presentation, PARK represented that investor money would be placed into pools managed by Phaetra Capital Management, and that the money would be used mainly for forex trading, and to a lesser extent, for investing in fixed income securities, commodities, and equities.

c.    Based on the Historical Returns Chart, and on email communications with PARK over the Park Email Account and telephone communications with PARK, on or about January 9, 2016, Victim-1 entered into an investment agreement with PARK, pursuant to which Argenta was to provide capital management services, and was to receive fees in the amount of "10 percent of the annual performance," to be applied at the end of the fiscal year or at the time of withdrawal, if the investment period was less than 12 months. In or about January 2016, pursuant to the agreement, Victim-1 invested $800,0000 via wire transfer to the Argenta Account.

d.    From February 2016 to May 2016, PARK sent Victim-1 monthly statements by email from the Park Email Account, falsely showing positive returns on Victim-1's investment.

### Victim-2 and Victim-3

11.    Based on my participation in the interview of two victim investors ("Victim-2" and "Victim-3") of HAENA PARK, the defendant, a review of documents provided by Victim-2, and a review of electronic communications between Victim-2, PARK, and others, I have learned the following:

a.    Victim-2 and Victim-3 are the parents of Victim-1, and, at the time of this Complaint, resided in New Jersey. In or about January 2016, Victim-1 referred Victim-2 and Victim-3 to PARK for her investment services.

b.    Based on email communications with PARK via the Park Email Account and on conversations with Victim-1, on or about January 9, 2016, Victim-2 and Victim-3 entered into an investment agreement with PARK, pursuant to which Argenta was to provide capital management services with a fee structure similar to that in the agreement with Victim-1. In or about January 2016, pursuant to the agreement, Victim-2 and Victim-3 invested $650,0000 via wire transfers to the Argenta Account.

c.    In or about February 2016, PARK began to send monthly statements for Victim-2 and Victim-3's investment to Victim-1 by email using the Park Email Account, and Victim-1 would inform Victim-2 and Victim-3 of the positive returns that the statements falsely stated. In or about April 2016, based on these returns, and on additional communications with PARK, Victim-2 and Victim-3 invested an additional $200,000 via wire transfer to the Argenta Account.

## Victim-4

12.   Based on my participation in the interview of a victim investor ("Victim-4") of HAENA PARK, the defendant, a review of documents provided by Victim-4, and a review of electronic communications between Victim-4, PARK, and others, I have learned the following:

a.     At the time of this Complaint, Victim-4 was a physician and a parapeligic residing in Maryland.

b.     On or about March 30, 2015, PARK used the Park Email Account to send Victim-4 an earlier version of the Historical Returns Chart, showing false returns through the end of February 2015, and PARK told Victim-4 that the minimum investment in her fund was $1 million. Prior to investing with PARK, Victim-4 told PARK that he would be retiring shortly because his health was rapidly deterioriating.

c.     On or about April 1, 2015, Victim-4 entered into an agreement with PARK (the "April Agreement"), pursuant to which Phaetra Capital Management, as "successor-in-interest" to Argenta, would provide capital management services, and was to receive an upfront fee of two percent of principal plus "ten percent of the annual performance of the investment," to be applied at the end of the fiscal year or at the time of withdrawal, if the investment period was less than 12 months. In or about April 2015, pursuant to the agreement, Victim-4 invested $700,000 via wire transfer to Personal Account-1.

d.     Beginning in or about May 2015, PARK sent monthly emails from the Park Email Account to Victim-4, falsely showing positive results on his investment. For example, a statement dated May 5, 2016 reflected purported positive monthly returns for every month since April 2015 and a cumulative return of 35.7%.

e.     On or about May 15, 2015, based on PARK's false representations regarding positive returns on Victim-4's investment, Victim-4 entered into an agreement with PARK with terms substantially the same as those in the April Agreement. In or about May 2015, pursuant to the agreement, Victim-4 invested $300,000 via wire transfer to Personal Account-1.

f.     On or about June 8, 2015, based on PARK's representations regarding positive returns on Victim-4's investment, Victim-4 entered into an agreement with PARK with terms substantially the same as those in the April Agreement. In

7

or about June 2015, pursuant to the agreement, Victim-4 invested two million dollars via wire transfer to Personal Account-1.

g.    On or about September 22, 2015, based on PARK's ongoing false representations regarding positive returns on Victim-4's investment, Victim-4 entered into an agreement with PARK with terms substantially the same as those in the April Agreement. In or about September 2015, pursuant to the agreement, Victim-4 invested one million dollars via wire transfer to Personal Account-1.

## Victim-5 and Victim-6

13.    Based on my participation in the interview of a victim investors ("Victim-5" and "Victim-6") of HAENA PARK, the defendant, a review of documents provided by Victim-6, and a review of electronic communications between Victim-6, PARK, and others I have learned the following:

a.    At the time of this Complaint, Victim-5 was a retiree residing in Maryland, and Victim-6 was Victim-5's adult son residing in Illinois.

b.    In or about December 2012, PARK used the Park Email Account to send Victim-5 an account statement of a puported anonymous investor of PARK's, purportedly reflecting a total return of 107.9 percent between November 2009 and December 2012 on a $500,000 investment. Both Victim-5 and Victim-6 relied on this account statement in deciding to invest with PARK. Prior to investing with PARK, Victim-5 told PARK that Victim-5 was liquidating her retirement account and that the money she was investing represented a significant portion of her net worth. PARK assured Victim-5 that the investment was a low risk enterprise.

c.    In or about December 2012, Victim-6 entered into an investment agreement with PARK, with a fee structure similar to that in the agreement with Victim-4. On various dates from in or about January 2013 through in or about August 2015, pursuant to the agreement, Victim-5 and Victim-6 invested a total of approximately $478,000 via wire transfers to Personal Account-1 and Personal Account-2.

d.    Beginning in or about January 2013, PARK sent monthly statements from the Park Email Account to Victim-6, showing consistently high net returns for the funds invested by Victim-5 and Victim-6. For example, on or about May 4, 2016, PARK sent an email from the Park Email Account to Victim-6,

8

attaching a chart that falsely showed a cumulative return of 102.6 percent. Victim-5 and Victim-6 relied on the monthly statements in deciding to invest additional money with PARK.

## PARK Loses Investor Funds Through Unsuccessful Trading

14.    Based on my review of records for the Brokerage Account and my interviews of the individuals who invested with HAENA PARK, the defendant, I have learned, among other things, the following:

a.    Nearly all the money PARK solicited from investors flowed through the Argenta Account, Personal Account-1, and Personal Account-2 to the Brokerage Account. PARK traded primarily in highly leveraged futures and forex transactions. PARK's trading was consistently unsuccessful.  Of the approximately $20 million in investor funds PARK actually used for trading from in or about January 2010 through in or about June 2016, PARK lost approximately $19.5 million, including commission and fees.

b.    From at least in or about January 2013 through in or about May 2016, PARK continued to send her investors false and misleading account statements, claiming that the investors were reaping positive returns.  At no time did PARK disclose to her investors that she had lost their money.

## PARK Pays Back Investors in Ponzi-like Fashion

15.    Based on my review of records for the Argenta Account, Personal Account-1, and Personal Account-2, and my interviews of the individuals who invested with HAENA PARK, the defendant, I have learned, among other things, the following:

a.    PARK used new investor funds to pay back other investors in a Ponzi-like fashion.  In total, of the more than $23 million in investor funds received by PARK, approximately $3 million was used, not to trade, but to repay other investors. For example, on or about January 11, 2016, the Argenta Account received an incoming wire for $623,000 from Victim-1.  That same day, $420,000 was wired to another victim investor from the Argenta Account.

b.    At no time did PARK disclose to her investors that she was using investment money to make payments to other investors.

9

PARK Lies to the NFA

16.   On or about March 31, 2016, the NFA commenced a
routine examination of Phaetra Capital Management. A
representative of the NFA wrote a memorandum of the examination,
which I have reviewed. I have also reviewed emails and documents
sent to the NFA by PARK using the Park Email Address. Based on
my review of that memo, and those emails and documents, I have
learned that PARK made the following misrepresentations to the
NFA, in substance and in part:

        a.   Phaetra Capital Management had not commenced
business of any kind.

        b.   Neither Phaetra Capital Management nor PARK
currently managed any third party accounts.

        c.   Neither Phaetra Capital Management nor PARK had
conducted any futures or forex business.

        d.   The activity in the Brokerage Account was
proprietary in nature and comprised solely of PARK's personal
funds.

        e.   No promotional materials had been distributed to
any third party by PARK.

     WHEREFORE, I respectfully request that an arrest warrant be
issued for HAENA PARK, the defendant, and that she be arrested
and imprisoned or bailed, as the case may be.


                              _____
                              PAUL ROONEY
                              SPECIAL AGENT
                              HOMELAND SECURITY INVESTIGATIONS


Sworn to before me this
2nd day of June, 2016


_____
HONORABLE ANDREW J. PECK
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK